The opinion of the Court was delivered at April term 1823, at Taunton, by
Parker C. J.
It is very clear, that these two towns cannot join in this action ; they claim as tenants in common, and ought to sue severally for their undivided right.[1] But this difficulty might be avoided by striking out one of the plaintiff towns ; which the Court would authorize, if the action could be maintained by either of the towns alone. We have, *234 therefore, looked into the case, to see if the inhabitants of Re hoboth could maintain the action, if they were the sole plaintiffs, and are satisfied they could not. The title to the township was, by the ancient conveyances, in sundry persons, not as a corporation, but as individuals, being tenants in common ; for although they are mentioned in some of the ancient conveyances as townsmen, or as inhabitants of Rehoboth, this is only by way of description, and not as designating the capacity in which they are to take.
The first attempt to make a disposition of this land is in 1697, when the town voted, that it should be left common for ever. This did not give title to the town, and would not au thorize them to claim seisin and possession of it. Those who should be interrupted in the use of it as a common, would have their action on the case. There is no evidence of any actual use or possession of this land under this vote.
In 1735, the proprietors, who had then begun to act sep arately from the town, appropriated it to the use of all the proprietors for digging clay, and the herbage or income of it was devoted to the support of a school in the town, and the selectmen were authorized to lease or let it for ever.
Considering the proprietors, at this time, as the owners of this tract of land, we are to inquire, what is the legal effect of the above vote respecting it.
It certainly did not vest a fee in the inhabitants of the town, for the land is expressly appropriated to the common use of the proprietors for digging clay ; nor are there any words of grant or conveyance of any kind to the town. The income only is given to the support of a school, and the selectmen are made agents for leasing the land. There is no legal estate in the town or selectmen. But, considering the inhabitants as beneficially interested in this appropriation, they may be considered as entitled to the herbage or income, to appropriate it according to the terms of the vote. But this gives them no seisin of the land, so that they can maintain a writ of entry.
Perhaps trespass quart clausum would lie, if their herbage was injured ; and they must have a right to enter, to take care of the land, and fit it for the production of grass or other vegetable ; or, if they lease it, their lessee may maintain trespass.
*235 In Co. Lit 4 6, it is said ; “ If a man have twenty acres of land, and by deed grant to another and his heirs vesturam tei'rae, the land itself shall not pass, because he hath a particular right in the land, for thereby he shall not have the houses, timber-trees, &c. parcel of the inheritance, but he shall have the vesture, that is, the corn, grass, underwood, &c. And he shall have an action of trespass quare clausum fregit. The same law, if a man grant herbagium terrae, the grantee hath a particular right in the land, and shall have an action quare clausum fregit; but, by grant thereof and liverie made, the soile shall not pass.” It is true, that in the same book it is laid down, that if a man seised in fee of land, grant to another and his heirs the profits of the land, the land itself will pass; and the reason given is, that profits include herbage, vesture, trees, mines, and whatever is parcel of the land ; but the vote of the proprietors, under which the plaintiff towns claim, reserves the soil for the use of the proprietors, and gives only the herbage or income to the town.
In a note by the editors of Coke upon Littleton, (4 6, note 19,) it appears that this doctrine was anciently doubted, but it is stated, that the law as laid down by Coke was confirmed.
We think the fee in the land remained in the proprietors, notwithstanding their vote of 1735, by which the inhabitants of the town acquired a right to use and improve the land and take the profits thereof; and if the inhabitants are disturbed in the enjoyment of their right, they can recover damages in an action of trespass, but they cannot maintain a writ of entry ; because that is to recover possession of the land itself; and they have no right to that against the proprietors or those claiming under them.[1]
The rescinding of the vote of 1735, in 1817, was void, for the proprietors could not avoid or destroy their own grant.[2] It does not appear, that the town had discontinued the use of t.ie land long enough to forfeit their right, and the deed of the proprietors to the defendant in this action cannot prejudice the *236 demandants. They may maintain an action for damages, il tney are prevented from taking the profits of the land, against one holding under the proprietors, as well as against any
stranger, and they have a right to enter and hold possession for the purpose of taking care of the land, and gathering the crops ;[1] but not being seised in fee of the land, as they' have set forth in the writ, they cannot maintain this action.

Judgment for the tenant.

 Jackson on Real Actions, 69.

 See Worcester v Green, 2 Pick. 425; Hasty v. Johnson, 3 Greenl. 289.

 Pike v Dyke, 2 Greenl 213.

 Under a prescriptive right to enter upon land and take herbage there, a party cannot justify the cutting and carrying away grass, the digging of pota toes, or the gathering of apples. Simpson v. Coe, 1 N Hamp. Rep. 301.